RECEIVED
AUG 2 0 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO: 6:08-00011-01 |
| VERSUS | JUDGE DOHERTY |
| EMANUEL CHARLES III | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Currently pending before the Court is defendant's "Objection to the Admissability [sic] of 404(b) Evidence and Request for Pretrial Hearing."[1] [Rec. Doc. 45] In the objection, defendant moves the Court for an order prohibiting the government from introducing certain FED. R. EVID. 404(b) evidence at trial. For the following reasons, defendant's objection is GRANTED.

### Background

On January 16, 2008, a federal grand jury in the Western District of Louisiana charged defendant Emmanuel Charles III with one count of possession with intent to distribute cocaine base, one count of possession with intent to distribute cocaine, one count of maintaining a drug-involved premises, one count of possession of ammunition by a convicted felon, and two counts of forfeiture. Defendant has pled not guilty to all charges. The matter is set for trial on December 1, 2008.

On February 15, 2008, the Government filed a Notice of Intent to Use 404(b) Evidence. [Rec. Doc. 29] In the Notice, the government provided the following factual synopsis:

---

[1] It appears the document was misnamed and should actually read "Objection to the Admissibility of 404(b) Evidence and Request for Pretrial *Ruling*," as defendant does not request a "hearing" in the objection, the supporting memorandum, or the proposed order. Defendant's prayer however, includes a request for "a pretrial determination of admissibility." [Rec. Doc. 45, p.4] Accordingly, the Court declines to hold a pretrial hearing.

On April 20, 2007 agents of Lafayette Metro Narcotics had received information that EMANUEL CHARLES, III had large amounts of controlled dangerous substances in his apartment at 330 Feu Follet Road and was cooking crack in the apartment. Agents initiated surveillance at the apartment and observed CHARLES exit the apartment and place something inside of a parked black 1995 Chevrolet Impala and then proceed to place a white trash bag in the dumpster across from the apartment.

After placing the white trash bag in the dumpster, CHARLES entered his Impala and proceeded to drive off. A marked unit inserted itself in the surveillance and followed CHARLES until a traffic infraction was observed (no seat belt, no license plate light and red light violation). A traffic stop was effected at the intersection of Pinhook and Jefferson. CHARLES signed a consent to search form and when agents began to search the car, CHARLES fled on foot but was apprehended before he could escape. A narcotics K-9 was used to inspect the vehicle and alerted to the vehicle's exterior and on a small box located within. The box was found to contain 185 grams "crack" (later analyzed to be cocaine base with a net weight of 170 grams) and 270 ml of liquid in a baby bottle (analyzed to be codeine).

The agents then secured the defendant's apartment and sought a state search warrant. Upon executing the search warrant, agents seized $7,500.00 of U.S. currency, a box of Winchester 9mm ammunition, a plastic bag of marijuana, a plastic bag of powder cocaine (analyzed to be cocaine with a net weight of 174 grams). The officers also found whisks, a microwave, digital scale and cups all with residue indicative of manufacturing cocaine base. They also seized canisters with hidden compartments, a black ski mask, large empty zip-lock bags with cocaine residue, documents and mail with defendant's name and the defendant's cellular telephone. Photographs taken during the execution of the search warrant show a black ski mask, the aforesaid currency, the box of Winchester ammunition, the small bag of marijuana, the digital scale, the bag of cocaine powder, the microwave, four (4) one pound boxes of baking soda and open boxes of sandwich bags.

[Rec. Doc. 29, pp. 1-2]

The government additionally states in the Notice that it intends to introduce the following evidence, pursuant to Rule 404(b), at the trial of this matter:

    a.    Certified copy of conviction from the Fifteenth Judicial District Court, Lafayette Parish in Docket No. 64194 for possession with the intent to distribute cocaine in violation of La R.S. 40:967, a felony, as the result of a guilty plea on April 30, 1993. The defendant was sentenced to Louisiana Department of Corrections serve a term of a five (5) years which was suspended and five (5) years supervised probation (attached),

b.  Witness testimony that on January 14, 1994 at 8:00 p.m. agents of Lafayette Metro Narcotics executed a search warrant at 602 South Sterling Street. EMANUEL CHARLES was present and found to be in possession of cocaine base and $1,171.00 in United States Currency. The search warrant for the residence was obtained after several controlled purchased by a confidential informant from EMANUEL CHARLES at that address, during which time the transactions were monitored by a transmitting body wire.

c.  Witness testimony that on numerous occasions the defendant called the police to report that his residence had been burglarized and that on two of those occasions large sums of cash were stolen. On 10/29/2004 the defendant reported $3,500.00 in U. S. Currency stolen from his home and on 11/19/2000 the defendant reported $800.00 in U. S. Currency stolen from his home.

[Id at pp. 2-3]

## Applicable Law

FED. R. EVID. 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

As noted by the Fifth Circuit in U.S. v. Gonzalez-Lira, 936 F.2d 184, 189 (5th Cir. 1991):

> Rule 404(b) is a rule that both excludes and admits evidence. It excludes evidence of a defendant's character when that evidence is introduced solely for the purpose of showing that the defendant had a bad character and that he acted in conformity with it. On the other hand, Rule 404(b) admits evidence of prior bad acts by the defendant introduced to prove things unrelated to character, such as the defendant's state of mind.

The seminal Fifth Circuit case addressing FED. R. EVID. 404(b) is United States v. Beechum, 582 F.2d 898 (5th Cir. 1978)(*en banc*). Beechum began with the proclamation that Rule 404(b):

> [F]ollows the venerable [common law] principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character. Even though such evidence is relevant, because a man of bad character is more likely to commit a crime than one not, the principle prohibits such evidence because it is inherently prejudicial.

Id. at 910. Next, the Court set forth the analysis a trial court must apply when the government anticipates submitting evidence at trial of other crimes, wrongs, or acts committed by the accused. The Court stated the test as follows:

> What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403. The test for relevancy under the first step is identical to the one we have already encountered. The standards are established by rule 401, which deems evidence relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged. In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, "a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv.L.Rev. 954, 955 (1933). Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed.
>
> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense...
>
> ... [A]n extrinsic offense relevant to the issue of intent is valid only if an offense was in fact committed and the defendant in fact committed it. Therefore, as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant. . . .
>
> The standard of proof for ruling upon factual conditions to relevancy is supplied by FED. R. EVID. 104(b), which states as follows:

-4-

> Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
>
> As the rule provides, the task for the trial judge is to determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense. The judge need not be convinced beyond a reasonable doubt that the defendant committed the extrinsic offense, nor need he require the Government to come forward with clear and convincing proof. The standard for the admissibility of extrinsic offense evidence is that of rule 104(b): "the preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." 21 Wright & Graham, Federal Practice and Procedure: Evidence s 5054, at 269 (1977).
>
> Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense, the evidence satisfies the first step under rule 404(b). The extrinsic offense is relevant (assuming the jury finds the defendant to have committed it) to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent. . . .

Id. at 911-14 (footnotes and citations omitted).

As to the second step of the 404(b) analysis - whether the probative value of the extrinsic evidence substantially outweighs its undue prejudice - the Court stated the following:

> Probity in this context is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference. It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice. Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily. If the defendant's intent is not contested, then the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice; therefore, in this circumstance the evidence is uniformly excluded. In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charged and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the extrinsic offense is sufficiently similar in its physical elements so that its probative value is not

substantially outweighed by its undue prejudice is a matter within the sound discretion of the trial judge. The judge should also consider how much time separates the extrinsic and charged offenses: temporal remoteness depreciates the probity of the extrinsic offense.

Id. at 914-15 (citations omitted.)[2]

## Analysis[3]

1.  **Admissibility of: "Certified copy of conviction from the Fifteenth Judicial District Court, Lafayette Parish in Docket No. 64194 for possession with the intent to distribute cocaine in violation of La R.S. 40:967, a felony, as the result of a guilty plea on April 30, 1993."**

According to the government's Notice, the government intends to submit evidence at trial, concerning defendant's prior conviction for possession with intent to distribute cocaine, in order to show:

> [T]his defendant has previously possessed with the intent to distribute cocaine and distributed cocaine. The purpose for the introduction is to prove that the defendant's possession of the controlled substances was not by mistake, or accident and is evidence of knowledge, intent, pattern and motive.

[Rec. Doc. 29, pp. 2-3]

---

[2]As to procedural issues with regard to 404(b), the Court noted:

If at the commencement of trial it is not certain that the defendant will contest the issue of intent, the judge is in a poor position to weigh the probative value against the prejudice of the evidence because he cannot foresee the nature or extent of either the Government's case or the defendant's response. . . . [In Beechum,] it was clear before the case went to trial that the crucial issue would be Beechum's intent.

Id. at 915-16 (citations omitted).

[3] The Court notes, with the exception of "intent," the government has not made specific arguments as to why 404(b) evidence should be admissible to show "mistake," "accident," "knowledge," "pattern" or "motive." Rather, the government has merely listed, without any further explanation or argument, these potential exceptions to the use of 404(b) evidence. Consequently, the Court declines to address these possible exceptions to Rule 404(b), other than to GRANT defendant's objections to the use of 404(b) evidence by the Government in order to prove "mistake," "accident," "knowledge," "pattern" or "motive."

In support of its argument, the government states:

> Where knowledge and intent are elements of the charged offense, evidence of extrinsic acts is especially relevant. . . . The Fifth Circuit has held that where intent is an element of the offense, the entry of a not guilty plea puts intent at issue, and thus, justifies the admission of evidence of extrinsic facts. United States v. Parsee, 178 F.3d 374, 379 (5th Cir. 1999).
>
> Additionally, the Fifth Circuit noted that "exclusion of extrinsic evidence based on its prejudicial effect should only occur sparingly." United States v. Leahy, 82 F.3d 624, 637 (5th Cir. 1996). Any risk of undue prejudice may be addressed with an appropriate limiting instruction to the effect that the extrinsic evidence should only be considered to show knowledge, intent, plan, etc. United States v. Posada-Rios, 158 F.3d 832, 871 (5th Cir. 1998).
>
> When dealing specifically with prior drug convictions, the Fifth Circuit previously held [sic][4] [e]vidence that one [sic] was previously convicted of a cocaine delivery offense ... makes it more probable that he had the requisite "state of mind" or "intent" to participate in the present cocaine-related offenses."[5] United States v. Buchanan, 70 F.3d 818, 831 (5th Cir. 1995).

[Rec. Doc. 29, pp. 4-5]

In sum, the government argues because it must prove "intent" in this matter, evidence of defendant's other crimes and prior bad acts is admissible. However, every case the government cites in support of its argument involves a charge of "conspiracy."[6] When one traces this line of cases

---

[4] The quoted portion of Beechum should begin where the Court has inserted the first "[sic]."

[5] The entire quotation actually reads as follows:

> Evidence that Bonner was previously convicted of a cocaine delivery offense *tends to refute his story that he was merely 'in the wrong place at the wrong time,' and* makes it more probable that he had the requisite 'state of mind' or 'intent' to participate in the present cocaine-related offenses. *See* United States v. Cheramie, 51 F.3d 538, 541-42 (5th Cir.1995) (holding evidence of prior drug sales admissible under 404(b) to show 'knowledge' and 'intent' where defendant claimed he did not know that the gym bag he took possession of contained two kilograms of cocaine).

Buchanan at 831 (emphasis added).

[6] In fact, every case cited in the government's brief, with the exception of Beechum, involves a charge of conspiracy.

back to its origin, it appears the jurisprudence cited by the government, and the precepts contained therein, arose out of the unique nature of conspiracy charges, and the difficulty of proving the requisite "intent" sufficient to support a charge of conspiracy. See U.S. v. Roberts, 619 F.2d 379, 382-3 (5th Cir. 1980).[7] The underlying reasoning of the cases cited by the government does not

---

[7] In Roberts, the Fifth Circuit stated as follows:

> *Charges of conspiracy involve considerations not present in other criminal prosecutions.* "(T)he offense of conspiracy requires an element of intent or knowledge which is often difficult to prove." United States v. McMahon, 592 F.2d 871, 875 (5th Cir. 1979). Because the prosecution must prove that the defendant knowingly joined a plan to commit a crime, evidence that establishes a defendant's participation in a criminal act, or evidence establishing his association with co-conspirators, may be insufficient to support the inference that the defendant voluntarily joined a conspiracy to commit a crime. *Intent is particularly difficult to prove when a defendant is a passive or minor actor in a criminal drama.* If the evidence linking a defendant to a conspiracy is subject to an innocent interpretation, the government may be forced to present some independent evidence of intent to withstand a motion for directed verdict. Moreover, if the government does not present intent evidence in its case in chief the defendant may simply rest and argue lack of intent to the jury without giving the government the opportunity to present such evidence in rebuttal.
>
> Unequivocal evidence that a defendant committed a substantive offense may justify the inference that he intended to do so, but it does not plainly support the conclusion that he agreed and planned with others to commit the crime. Evidence of a defendant's association and dealings with a group of conspirators, even when he knows they intend to commit a crime, does not alone show that he himself had the requisite intent to join the conspiracy. *In every **conspiracy** case, therefore, a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government.* Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he "affirmatively take(s) the issue of intent out of the case." United States v. Williams, 577 F.2d 188 (2d Cir. 1978). [FN2]
>
>> FN2. If, for example, the defendant intends to take the stand and deny any participation in the acts evidencing a conspiracy, he may wish to stipulate that those acts prove intent if his participation is established to the satisfaction of the jury. Similarly, a defendant who intends to assert a defense based upon mistaken identity may make an appropriate stipulation to avoid the introduction of extrinsic offense evidence.

Id. at 382-83 (emphasis added) (some citations omitted).

seem applicable here. Defendant has not been charged with participation in a conspiracy[8], and therefore, the matter does not seem to involve the unique considerations pertinent to a conspiracy charge - *i.e.* that defendant knowingly and voluntarily joined in a plan with others to commit some criminal act.[9]

The government continues its argument with the following:

> [T]he Government will not use the prior convictions [sic][10] for purposes of attacking the defendant's character and requests admission only for use of proving intent . . . . Furthermore, the Government would request the Court to provide jury instructions limiting the use of the prior convictions solely to the issue of intent to distribute. In regard to the second prong of the test, the Government maintains if used it will be for the limited purpose of proving one element of the offense. The admission of the convictions and testimony would not cause substantial undue prejudice on the defendant. Conversely, as mentioned above, the probative value of the prior convictions and testimony in this case is substantial due to the necessity and burden of proving the intent element of the crime.

[Rec. Doc. 29, p.6] The government concludes:

> The amount of drugs involved here are clearly not for personal use, and the amount of cash found in the defendant's home is directly related to the defendant's intent to distribute those drugs, if not the proceeds of actual distribution. The defendant's prior conviction and drug distribution activity, coupled with his history of possessing large sums of cash without the legal means necessary to amass such sums of cash, are clear evidence that this defendant has a pattern of distribution, and there is no mistake as to the intent to distribute. The probative value of admitting the above 404(b) type evidence, considering the aforementioned jurisprudence and the facts and circumstances of this case, clearly outweighs any undue prejudice to the defendant. Intent to distribute is key in this case.

[Id. at 7]

---

[8] Again, defendant is charged with possession with intent to distribute cocaine base, possession with intent to distribute cocaine, maintaining a drug-involved premises, possession of ammunition by a convicted felon, and forfeiture.

[9] Roberts at 383 ("Charges of conspiracy involve considerations not present in other criminal prosecutions. . . .")

Only one prior conviction has been brought to the attention of the Court.

In response, defendant argues: "The prior conviction of your defendant, Emanuel Charles III, was in 1993. The offense occurred in 1992 when your defendant was twenty years old. The period of remoteness is approximately fifteen years." [Rec. Doc. 45-3, p.4 (*citing* United States v. Duffaut, 2001 WL 428379 (E.D.La.)(Clement, J.)(Although defendant's previous conviction for simple possession of crack cocaine was relevant to the issue of "intent" for the charged crimes of possession of crack with intent to distribute and conspiracy to distribute same, its ten year temporal remoteness "destroy[ed] much of its probative value"; evidence of prior conviction excluded, citing Beechum); *and* United States v. Carter, 516 F.2d 431, 434-35 (5th Cir. 1975)(Where defendants were charged with possession of "1,035 pounds of sugar intended for use in violating the laws prohibiting the manufacture and sale of nontaxpaid alcoholic spirits," the appellate court overturned the trial court's admission of 404(b) evidence concerning five previous liquor law offenses - the most recent of which occurred ten years prior - finding the risk of unfair prejudice defendant may be found guilty primarily because of past wrongdoings, and the probative value, were outweighed by prejudice.))]

The Court finds that although the previous conviction is relevant to defendant's "intent' to commit the instant offenses, as in Carter, *supra*, the Court "pretermit[s] that issue, and focus[es] on the remoteness element, since it is of the most serious concern." Carter at 434. The prior conviction the government intends to introduce at trial (purportedly to show defendant's intent to commit the instant offenses) is more than fifteen years old. Defendant was twenty years old at the time of his earlier conviction and thirty-five when indicted for the current charges.[11] Furthermore, if the factual

---

[11]*See* United States v. San Martin, 505 F.2d 918, 922 (5th Cir. 1974)(offenses nine and ten years earlier were too remote to have probative value, particularly where the earlier offenses were committed when defendant was 17 and 18 years old); *and* Carter at 435 ("immature judgment . . . was clearly a factor [in San Martin] in concluding that the earlier offenses lacked probative value regarding the defendant's intent in committing acts ten years later"; "the probative value of Carter's criminal record was considerably diminished by the ten year hiatus, to such an extent that it was outweighed by the prejudice

synopsis provided by the government is proven at trial, it seems the government has a rather "strong case on the intent issue"[12]: law enforcement officers located 185 grams of crack cocaine in defendant's vehicle (from which he fled); a search of defendant's residence uncovered $7500 in currency, ammunition, marijuana, powder cocaine, canisters with hidden compartments, four (4) one pound boxes of baking soda, as well as whisks, a microwave, digital scale, zip-lock bags and cups, all of which purportedly contained cocaine residue. Due to its temporal remoteness and the government's "strong case on the intent issue," the Court finds the probative value of defendant's fifteen year old conviction is outweighed by the prejudice which likely would result from its admission. Accordingly, defendant's objection to the use of defendant's prior conviction at trial is GRANTED.

2. **Admissibility of: "Witness testimony that on January 14, 1994 at 8:00 p.m. agents of Lafayette Metro Narcotics executed a search warrant at 602 South Sterling Street. EMANUEL CHARLES was present and found to be in possession of cocaine base and $1,171.00 in United States Currency. The search warrant for the residence was obtained after several controlled purchased [sic] by a confidential informant from EMANUEL CHARLES at that address, during which time the transactions were monitored by a transmitting body wire."**

The Government argues[13]:

[It] intends to introduce evidence that the defendant, on several occasions has been found to be in possession of large sums of cash without having the legal means in which to make such large sums of cash. Again, the purpose for the introduction is to

---

to Carter resulting from its admission").

[12] Beechum at 914.

[13] The government has not made separate arguments as to the admissibility of each item of 404(b) evidence it intends to submit at trial. Additionally, the government has provided almost no argument specifically addressing the second two topics of 404(b) evidence it intends to submit at trial - *i.e.*, testimony regarding possession of cocaine base and cash in 1994, and testimony regarding defendant's reports of burglary. The statements quoted by the Court above, are the only statements in the government's brief the Court has located which have direct bearing on this particular evidence.

prove that the defendant's possession of the controlled substances was not by mistake, or accident and is evidence of knowledge, intent, pattern and motive.

. . .

The admission of the convictions and testimony would not cause substantial undue prejudice on the defendant. Conversely, as mentioned above, the probative value of the prior convictions and testimony in this case is substantial due to the necessity and burden of proving the intent element of the crime.

. . .

The amount of drugs involved here are clearly not for personal use, and the amount of cash found in the defendant's home is directly related to the defendant's intent to distribute those drugs, if not the proceeds of actual distribution. The defendant's prior conviction and drug distribution activity, coupled with his history of possessing large sums of cash without the legal means necessary to amass such sums of cash, are clear evidence that this defendant has a pattern of distribution, and there is no mistake as to the intent to distribute. The probative value of admitting the above 404(b) type evidence, considering the aforementioned jurisprudence and the facts and circumstances of this case, clearly outweighs any undue prejudice to the defendant. Intent to distribute is key in this case.

[Rec. Doc. 29, p.3, 6, and 7]

In response, defendant argues:

In the 1994 instance your defendant was present in another person's home during the execution of a search warrant. He was found to have $1,171.00 on his person. A minute amount of cocaine was discovered in a purse in his vehicle. Your defendant was not prosecuted. That same court in *Deffaut et al, supra* determined that in the situation where the defendant was arrested in 1994 for constructive possession of crack cocaine, escaped from detention and the charges were refused by the district attorney the relevance and probative value was "...outweighed by the potential for undue prejudice" in the 2001 charged offense.

[Rec. Doc. 45, pp. 4-5]

The testimony the government seeks to introduce addresses an alleged "bad act" which occurred more than fourteen years ago. Additionally, there is no indication defendant was ever even charged for this alleged conduct. Accordingly, the Court finds, assuming *arguendo* such evidence

-12-

is relevant[14], the probative value of the admission of this line of testimony would be outweighed by the prejudice to defendant, which likely would result from its admission. Defendant's objection is thus GRANTED.

3. **Admissibility of: "Witness testimony that on numerous occasions the defendant called the police to report that his residence had been burglarized and that on two of those occasions large sums of cash were stolen. On 10/29/2004 the defendant reported $3,500.00 in U. S. Currency stolen from his home and on 11/19/2000 the defendant reported $800.00 in U. S. Currency stolen from his home."[15]**

Defendant objects to the admission of this testimony, arguing:

> The government also seeks to introduce 2002 and 2004 complaints by your defendant that his home was burglarized of $800.00 and $3500.00 respectively. The initial question in looking at these "acts" is does the extrinsic evidnece [sic] require that same intent as the charged offense? That question can be answered in the negative.
>
> . . . In the case at hand the government is asking this court to reason backwards....because the defendant allegedly had intent to distribute in the charged offense he must have had that state of mind when he complained his cash was stolen. This court must make the giant leap to infer the same state of intent in the extrinsic acts and the charged offense. The court would be required to infer and assume upon other inferences and assumptions. The court would have to perform the following:
>
>> 1. Assume the making of a complaint of burglary of cash was not for the purpose of reporting the crime;
>>
>> 2 Assume that the amounts claimed are "large sums";
>>
>> 3. Assume the defendant has no "legal means" to obtain sums of cash determining; and

---

[14] As previously noted: "[A]n extrinsic offense relevant to the issue of intent is valid only if an offense was in fact committed and the defendant in fact committed it. Therefore, as a predicate to a determination that the extrinsic offense is relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant. . . ." Beechum at 913-14.

[15] The government makes no specific argument as to the admissibility of the above 404(b) evidence, other than noted in the previous section.

4. Assume the cash came from drug transactions or was for drug transactions

5. Infer from those assumptions that the defendant had at the time of filing those complaints the same intent as intent to distribute crack cocaine or cocaine base.

Your defendant submits the complaint instances cited do not pass the first step under 404 (b). This court should not determine that the extrinsic offense requires the same intent as the charged offense.

[Rec. Doc. 45, pp.5-6 (emphasis in original)]

For the reasons noted by defendant, and because the government has not shown this particular 404(b) evidence is relevant, competent or of sufficient probative value to warrant its admission at trial, the Court GRANTS defendant's objection. Accordingly, any evidence regarding defendant's reports of burglary to his residence will not be admissible at trial.

## Conclusion

Due to the forgoing, defendant's objections to the Government's use of 404(b) evidence at trial is **GRANTED** in its entirety, based upon the arguments presented to date. If at trial, the government should wish to argue an alternative basis or present additional support for the admission of this evidence, it must make its argument outside of the presence of the jury.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____ day of April, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE