# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 08-0011 |
|---|---|
| VS. | JUDGE DOHERTY |
| EMANUEL CHARLES, III | MAGISTRATE JUDGE METHVIN |

### *RULING ON MOTION TO RECONSIDER THE GOVERNMENT'S MOTION TO QUASH*
*(Rec. Doc. 86)*

This matter is before the court on the government's motion to reconsider a prior ruling denying the government's motion to quash a portion of two subpoenas duces tecum, one directed to the Lafayette Parish Sheriff's Office and one directed to the Lafayette City Police Department.[1] The motion for reconsideration is opposed.

### *Background and Argument of Parties*

The government seeks an order quashing defendant's requests for copies of policy and procedure manuals of the agencies in question (city police, sheriff, and task force) "addressing procedure for traffic stop [sic], obtaining consent to search a vehicle, securing a home prior to search warrant, videotaping surveillances, traffic stops and searches."[2]

In the original ruling denying the motion quash, the undersigned found that the manuals were relevant, would promote effective representation of defendant, particularly in cross-examination of police officers, and was not unreasonable or oppressive as contemplated in Rule 17(c)(2) of the Federal Rules of Criminal Procedure.

---

[1] Rec. Doc. 83 (the prior ruling) and Rec. Doc. 86 (the motion for reconsideration).

[2] Rec. Docs. 72-2 and 72-3.

In its motion for reconsideration, the government again argues that the requested policy and procedure manuals are not relevant at a hearing on a motion to suppress, that the defense is improperly using subpoenas to obtain non-discoverable information, and is on a "fishing expedition." The government argues as follows:

> The defense in this case has failed to make a minimal showing of how these policy and procedures manuals could actually be relevant to this hearing and thus a <u>Terry</u> analysis of the traffic stop. The internal policy and procedure manuals for the Lafayette Parish Sheriff's Office and Lafayette City Police Department will not tell the court whether the stop was (1) justified at its inception, and (2) reasonably related in scope to the circumstances which justified the interference in the first place and therefore is not relevant at this hearing and not discoverable through a Rule 17(c) subpoena duces tecum."[3]

The government also argues that a qualified privilege attaches to the requested information, requiring the court to balance "the federal government's interest and the interests of the law enforcement agency in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure."[4] The government states that it is the Lafayette Police Department's position that "if these records are made subject to public review, the result will be compromise of any future investigation(s) while also placing officers at risk."[5]

In response, defendant argues that the government has no standing to quash the subpoena issued to the Lafayette Parish Sheriff's Office and Lafayette Metro Narcotics Task Force, as those agencies have already produced all requested records. Defendant further asserts that the

---

[3] *Motion to Reconsider the Government's Motion to Quash* (rec. doc. 86), p. 3.

[4] *Motion to Reconsider* (rec. doc. 86), p. 4, referencing *Commonwealth of Puerto Rico v. U.S.*, 490 F.3d 50, 63 (1st Cir. 2007); *In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565, 570-571 (5th Cir. 2006).

[5] *Ibid.*, p. 5, citing portion of Exhibit 1, correspondence from Lafayette Consolidated Government.

government has not provided any new support for its claim of irrelevancy. The remaining records held by the Lafayette City Police are relevant to the issues to be presented in the suppression hearing, defendant argues, as "the determination of the validity of the initial stop comes down to issues of proper procedure and credibility of the witnesses."[6] Defendant argues that the credibility of particular police officers is at issue in the suppression hearing, and "[e]vidence that an officer does not follow the 'orders' of his department tends to demonstrate that his procedures may be illegal and that he is not a trustworthy officer."[7] Defendant further asserts its experts in police procedure need the manuals to review, and counsel needs the manuals to prepare for proper cross-examination. Defendant cites several cases in support of his argument that the policy and procedure manuals are relevant.[8]

Finally, defendant argues that the government has not provided any support for the allegation that disclosure of the manuals would pose a risk to officer safety and investigations, and suggests as an alternative to quashing the subpoenas, if necessary, that the court do an *in camera* review of the materials to determine whether the materials pose a risk to police safety, and argues that in this case his "rights to effective counsel outweighs the City Police's need for secrecy."[9]

---

[6]*Response to Government's Motion to Reconsider* (rec. doc. ), p. 2.

[7]*Ibid.*, p. 5.

[8]See *U.S. v. Doe*, 801 F.Supp. 1562 (E.D.Tex. 1992), *Maddux v. Officer One*, 90 Fed. App. 754 (5th Cir. 2004); *Martin v. City of Alexandria Police Department*, 2005 U.S. Dist. LEXIS 44087; *Escobar v. City of Houston*, 2007 U.S. Dist. LEXIS 72706.

[9]*Response to Government's Motion to Reconsider* (rec. doc. 89), p. 7.

*Analysis*

The government argues that the release of policy and procedure manuals pose a risk to officer safety and investigations, but does not specifically state that the materials should be withheld on the basis of the law enforcement privilege. However, assuming the government has asserted the law enforcement privilege, in the Fifth Circuit, the law enforcement privilege is limited to investigative files in ongoing criminal investigations. In his concurring opinion in *In re: U.S. Dept. of Homeland Security*, cited by the government, Judge Dennis specifically noted same as follows:

> . . . our circuit's case law defines the law enforcement privilege as 'a qualified privilege protecting investigative files in an ongoing criminal investigation,' *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991), and the petitioner does not argue for or request extension of the privilege to anything else. Accordingly, the suggestion in the majority's conclusion that the privilege may affect 'information that might impede important government functions such as...securing the borders, or protecting the public from international threats,' is only dicta and cannot be taken as modifying our precedents.

*In re: U.S. Dept. of Homeland Sec.*, 459 F.3d 565, 572 (5th Cir. 2006).

In *Commonwealth of Puerto Rico v. U.S.*, 490 F.3d 50, 64 (1st Cir. 2007), cited by the government, the First Circuit, in an apparent expansion of the law enforcement privilege, "recognized, in principle, a qualified privilege for law enforcement techniques and procedures...." However, the government has not cited any Fifth Circuit authority recognizing expansion of the law enforcement privilege from "investigative files in an ongoing criminal investigation" to "law enforcement techniques and procedures." The Fifth Circuit expressly stated, in *In re: U.S. Dept. of Homeland Sec.*, 459 F.3d at 570, FN 2, "the purpose of the privilege in the Fifth Circuit is to protect from release documents relating to an ongoing criminal

investigation," and recognized that "the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document."[10]

Recently, a district court in Texas, rejecting an argument by the government that disclosure of expired pen/trap orders would jeopardize current and future investigations, reasoned as follows:

> Muzzling telecoms to prevent disclosure of pen/trap orders might in the odd case deprive a fugitive of useful information, but it would also deprive the law-abiding public of significant data about the frequency of compelled Government access to individual e-mail and phone records. If that sort of trade-off were legally acceptable, then the Government would be free to cloak in secrecy *any* investigative technique, from the most mundane search warrant to the most sophisticated electronic surveillance, thereby avoiding the disinfecting rays of public scrutiny. That result might seem felicitous to zealous and well-meaning officers of the law, but it misconceives the indispensable role of daylight in our system of justice....

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders,* 562 F.Supp.2d 876 (S.D. Tex. 2008).

Likewise, while the disclosure of police manuals could conceivably interfere in the odd case with an investigation, conceivable interference is not the applicable legal standard – if it were, then any investigative technique could remain secret.

It is undisputed that the policy and procedure manuals requested are not "investigative files in an ongoing criminal investigation," as the Fifth Circuit recognizes the contours of the law enforcement privilege. In the absence of controlling authority, the undersigned will not recognized an expansion of the law enforcement privilege to include documents or manuals containing law enforcement policies and procedures. Therefore, the undersigned finds that the

---

[10]*In re: U.S. Dept. of Homeland Sec.*, 459 F.3d at 571.

requested policy and procedure documents and manuals may not be withheld on the basis of the law enforcement privilege.

The government's assertion that the manuals are irrelevant in a suppression hearing is also without merit. In *U.S. v. Doe*, 801 F.Supp. 1562 (E.D.Tex. 1992), cited by defendant, the policies of the police department regarding inventory searches was critical during a suppression hearing to whether or not the government would have inevitably discovered the evidence sought to be suppressed. Similarly, in the case at hand, where the credibility of the defendant and police officers must necessarily be assessed, the court can well envision that the occurrence of certain actions may be denied as against, or asserted and affirmed as in accordance with, departmental policy and procedure. Therefore, the undersigned finds that the subpoenaed policy and procedure manuals are relevant and necessary for effective representation by counsel.

*Conclusion*

For the reasons given above and in the original Ruling (rec. doc. 83) denying the motion to quash,

**IT IS ORDERED** that the Motion to Reconsider the Government's Motion to Quash (rec. doc. 86) is **GRANTED IN PART AND DENIED IN PART** as follows:

1)	The undersigned has reconsidered her original ruling;

2)	The government's Motion to Quash (rec. doc. 77) is **DENIED**.

7

**IT IS FURTHER ORDERED** that by **Friday, December 12, 2008,** to the extent not already produced,[11] the subpoenaed information shall be produced to Chambers, as directed on the subpoenas.

Signed at Lafayette, Louisiana, on December 9, 2008.

*[signature]*

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

---

[11]According to the defendant, the Lafayette Parish Sheriff's Office and Lafayette Metro Narcotics Task Force have produced all requested records. Therefore, only the Lafayette City Police Department need complete its production.